# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

JEAN RECINOS ENAMORADO,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

No. C16-3029-MWB
No. CR14-3035-MWB
**OPINION AND ORDER REGARDING PETITIONER'S § 2255 MOTION**

_____

**TABLE OF CONTENTS**

*I.*   *INTRODUCTION AND BACKGROUND* .................................................. *2*
    *A.*   *Criminal Case Proceedings* ........................................................... *2*
    *B.*   *Petitioner's § 2255 Motion* ............................................................ *3*
*II.*   *LEGAL ANALYSIS* ............................................................................ *3*
    *A.*   *Standards For A § 2255 Motion* ...................................................... *3*
    *B.*   *Procedural Matters* ..................................................................... *6*
        *1.*   *Preliminary matters* ............................................................ *6*
        *2.*   *Procedural default* .............................................................. *6*
    *C.*   *Ineffective Assistance of Counsel* ..................................................... *7*
        *1.*   *Applicable Standards* ........................................................... *7*
            *a.*   *Strickland's "deficient performance" prong* ....................... *9*
            *b.*   *Strickland's "prejudice" prong* ........................................ *11*
        *2.*   *Enamorado's claims* ........................................................... *11*
            *a.*   *Firearm enhancement* ................................................... *11*
            *b.*   *Role enhancement* ....................................................... *13*
            *c.*   *Importation enhancement* .............................................. *15*
            *d.*   *Cooperation concessions* ................................................ *15*
    *D.*   *Certificate Of Appealability* ......................................................... *16*
*III.*  *CONCLUSION* ................................................................................ *17*

## I. INTRODUCTION AND BACKGROUND

Petitioner Jean Recinos Enamorado's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence which is presently before me, requires me to determine, *inter alia*, whether Enamorado's counsel was constitutionally ineffective as alleged.

### A. *Criminal Case Proceedings*

On June 18, 2014, a one-count Indictment was returned against Enamorado, and his co-defendants, charging him with conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. On October 28, 2014, Enamorado appeared before then United States Magistrate Judge Leonard T. Strand and entered a guilty plea.[1]

A probation officer then prepared a presentence report ("PSR"). The PSR indicated that Enamorado's total offense level was 40. PSR at ¶ 37. The PSR also indicated that Enamorado had five criminal history points, which placed him in criminal history category III. *Id.* at 61.

On May 4, 2015, Enamorado filed a Motion for Downward Variance and appeared before me the next day, May 5, 2015, for sentencing. I applied a two-level enhancement for a firearm found at the residence Enamorado shared with his girlfriend, pursuant to U.S.S.G. § 2D1.1(b)(1). I also applied a three-level enhancement for Enamorado's role in the offense and a two-level enhancement for importation of methamphetamine. The parties agreed to a departure from a criminal history category III to a criminal history category II because the guidelines overstated the seriousness of Enamorado's criminal history. Taking

---

[1] Magistrate Judge Strand was confirmed as a U.S. District Court Judge on February 12, 2016, and is now Chief Judge in the Northern District of Iowa.

that departure into account, I found that Enamorado's total offense level was 40 that he had a criminal history category of II. I also found that Enamorado's advisory United States Sentencing Guidelines range was 324 to 405 months. Neither Enamorado nor his counsel objected to my sentencing guideline calculations.

I then took up Enamorado's Motion for Downward Variance. In arguing for a downward variance, Enamorado pointed to the nature and circumstances of the offense. I granted Enamorado a 20 percent variance from 324 months, taking his sentence down to 259 months. Sentencing Tr. at 22. I next took up the prosecution's motion for a downward departure for substantial assistance. I granted the prosecution's motion, and further reduced Enamorado's sentence by 40 percent, from 259 months to 155 months. Enamorado did not appeal his sentence.

### B. Petitioner's § 2255 Motion

Instead of appealing his sentence, Enamorado filed a *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. In his motion, Enamorado asserts claims of ineffective assistance of counsel. I directed the Clerk of Court to appoint counsel to represent Enamorado and directed Enamorado, with the aid of counsel, to file a brief in support of his § 2255 motion. After respondent filed its answer, I set a briefing schedule on the § 2255 motion. Enamorado, with the aid of counsel, subsequently filed his brief in support of his § 2255 motion. Respondent then filed its response to Enamorado's § 2255 motion. Enamorado did not file a reply.

## II. LEGAL ANALYSIS
### A. Standards For A § 2255 Motion

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the

> ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *see Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the

4

'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

With these standards in mind, I turn to analysis of Enamorado's claim for § 2255 relief.

5

### B. Procedural Matters

#### 1. Preliminary matters

Even though ineffective assistance of counsel claims may be raised on a § 2255 motion, because of the advantages of that form of proceeding for hearing such claims, *see Massaro v. United States*, 538 U.S. 500, 509, that does not mean that an evidentiary hearing is required for every ineffective assistance claim presented in a § 2255 motion. A district court may not "grant a prisoner § 2255 relief without resolving outstanding factual disputes against the government." *Grady v. United States*, 269 F.3d 913, 919 (8th Cir. 2001) (emphasis in original). Where a motion raises no disputed questions of fact, however, no hearing is required. *See United States v. Meyer*, 417 F.2d 1020, 1024 (8th Cir. 1969). In this case, I conclude that no evidentiary hearing is required on any issue because the motion and the record conclusively show that Enamorado is entitled to no relief.

#### 2. Procedural default

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Because I construe Enamorado's claims to be claims of ineffective assistance of counsel, I will consider them on the merits.

## C. Ineffective Assistance of Counsel
### 1. Applicable Standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops*, 339 F.3d at 780; *see also Steele v United States*, 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id*. (quoting *Strickland*, 466 U.S. at 686). To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show

"both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

Although the petitioner must prove both prongs of the *Strickland* analysis to prevail, the Supreme Court does not necessarily require consideration of both prongs of the *Strickland* analysis in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order. As the Court explained in *Strickland*,

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[2]

---

[2] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from

(Footnote continued . . .

I will consider the two prongs of the *Strickland* analysis in a little more detail, before analyzing Enamorado's claims.

### a. *Strickland's "deficient performance" prong*

The performance prong of *Strickland* requires a defendant to show that "'counsel's representation fell below an objective standard of reasonableness.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland,* 466 U.S. at 688 (italics omitted)); *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

*Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.* at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at ——, 131 S. Ct., at 779.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without "the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*,

---

counsel's alleged deficiencies." (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

9

131 S. Ct. 733, 741 (2011); *see also id*. at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed" (citing *Richter*, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, 466 U.S., at 689, and by giving a 'heavy measure of deference to counsel's judgments,' *id*., at 691."). This is so, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing *Bell v. Cone*, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690). Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S. Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range" of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)).

### b. Strickland's "prejudice" prong

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler,* 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ——, 131 S. Ct., at 791.

*Cullen*, 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

### 2. *Enamorado's claims*

Enamorado alleges that his counsel provided ineffective assistance in the following four ways: first, failing to object to the two-level enhancement for the firearm found at the residence he shared with his girlfriend, pursuant to U.S.S.G. § 2D1.1(b)(1); second, failing to object to the three-level enhancement for Enamorado's role in the offense; third, failing to object to the two-level enhancement for importation of methamphetamine; and, fourth, failing to secure terms in the plea agreement under which he would not be subject to the previously mentioned enhancements. I will take up each of Enamorado's claims in turn.

### a. Firearm enhancement

Enamorado argues that his counsel should have objected to the two-level firearm enhancement because the pistol was dissembled and not readily usable. Enamorado claims that his counsel's failure to challenge the applicability of § 2D1.1(b)(1) prevented him from

11

being safety-value eligible.[3] The flaw in Enamorado's claim is that he cannot establish that he was prejudiced by his counsel's failure to object to the § 2D1.1(b)(1) enhancement. The § 2D1.1(b)(1) enhancement was fully supported by the fact that a .45 caliber handgun and ammunition were found in Enamorado's bedroom, where he also stored methamphetamine. *See United States v. Annis*, 446 F.3d 852, 856 (8th Cir. 2006) (generally enhancement applies if gun is found in same location where drugs or drug paraphernalia were stored, or where part of the conspiracy took place).

The fact that Enamorado had disassembled the pistol for cleaning does not alter the firearms enhancement's applicability, here, because he could easily reassemble it. *See Annis*, 446 F.3d at 857 (holding that court did not clearly err in applying § 2D1,1(b)(1) even though rifle was missing both the clip and the bolt, where defendant could have made rifle operational in just a few seconds by putting bolt and clip in it.); *United States v. Ryles*, 988 F.2d 13, 16 (5th Cir. 1993) (holding that court properly imposed a § 2D1.1(b)(1) increase in defendant's offense level where defendant's disassembled shotgun could have been "readily converted" to an operable firearm). Accordingly, even if Enamorado's

---

[3] The Guidelines state: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(b)(1). The Guidelines further state:
> "Dangerous weapon" means (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument . . . .

*Id.* § 1B1.1, cmt. n.1(D). Additionally, " 'Firearm' means (i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive . . . ." *Id.* cmt. n. 1(G).

counsel had objected to the § 2D1.1(b)(1) enhancement, such an objection would not have been sustained. Because Enamorado is unable to establish prejudice, I find it unnecessary to analyze whether the failure to raise the issue of compliance with the Vienna Convention amounted to deficient performance. *See Wong*, 558 U.S. at 16 ("To prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*.").

### b. *Role enhancement*

Enamorado also contends that his counsel should not have withdrawn his objection to the three-level role enhancement, for being a leader of five or more individuals, pursuant to U.S.S.G. § 3B1.1(b). Guideline § 3B1.1(b) provides that if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase [the offense level] by 3 levels." U.S.S.G. § 3B1.1(b); *see United States v. Moreno*, 679 F.3d 1003, 1004 (8th Cir. 2012) ("A three-level increase applies if the defendant managed or supervised criminal activity involving five or more participants, or which was otherwise extensive."). A sentencing court "considers factors such as the 'exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, . . . the nature and scope of the illegal activity, and the degree of control and authority exercised over others.'" *United States v. Cole*, 657 F.3d 685, 687 (8th Cir, 2011) (quoting U.S.S.G. § 3B1.1 cmt. n. 4). Thus, a defendant may be considered a manager or supervisor under § 3B1.1(b) if he "exercised some degree of control over others involved in the commission of the offense or played a significant role in the decision to recruit or to supervise lower-level participants." *United States v. Blount*, 291 F.3d 201, 217 (2d Cir. 2002) (internal quotation marks, citation, and alterations omitted). "The fact that other persons may play still larger roles in the criminal activity does not preclude a qualifying for a § 3B1.1(b) enhancement." *United States v. Hertular*, 562 F.3d 433, 449 (2d Cir. 2009). The Eighth Circuit Court of Appeals construes "manager" and "supervisor"

13

broadly.  *Moreno*, 679 F.3d at 1004; *United States v. Erhart*, 415 F.3d 965, 973 (8th Cir. 2005).

The role enhancement was properly applied.  In his plea agreement, Enamorado stipulated that he used five individuals as drug and money runners.  Plea Agreement at ¶ 14J, K, and Q.  Enamorado's claim, that his attorney should not have withdrawn Enamorado's objection to the role enhancement under § 3B1.1(b), is not supported by the record.  Enamorado's counsel explained to him that the information he provided to the prosecution and law enforcement officers during his post-*Miranda* interview formed the basis for this enhancement and it would be impossible to argue against his own admissions without risking the loss of acceptance of responsibility and the prosecution's substantial assistance motion, pursuant to US.S.G. § 5K1.1.  Moreover, Enamorado's counsel had secured the prosecution's agreement not to object to Enamorado's departure request, based on over representation of his criminal history, if he withdrew his objection to the role enhancement.  Given this concession, Enamorado's counsel concluded that the sounder strategy was to forego the objection to the role enhancement and, instead, pursue the prosecution's substantial assistance motion, pursuant to § 5K1.1 and, potentially, 18 U.S.C. § 3553(e).

Enamorado's counsel is presumed to have provided effective assistance, and Enamorado bears the burden of showing otherwise.  *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy") (internal citation omitted).  On this record, Enamorado has not established that his counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).  For these

reasons, I find no basis for Enamorado's claim that he was provided with ineffective assistance in this context.

### c. *Importation enhancement*

Enamorado also contends that his counsel should have objected to the two-level enhancement for the importation of methamphetamine, pursuant to U.S.S.G § 2D1.1(b)(5). That guideline authorizes a two-level increase if:

> the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully . . . .

U.S.S.G § 2D1.1(b)(5).

Enamorado misstates his counsel's action, because his counsel did object to and argue against the two-level importation enhancement. Sentencing Tr. at 6-12. However, I concluded that the importation sentencing enhancement applied to Enamorado because I found that he had called an individual in Mexico, ordered methamphetamine from that person, and then took delivery of it. Sentencing Tr. at 2-12. The fact that Enamorado's counsel's objection and argument proved unsuccessful does not mean that he was ineffective. *See James v. Iowa*, 100 F.3d 586, 590 (8th Cir. 1996) ("Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful."). Enamorado has failed to show that his counsel's representation on this issue was deficient. Accordingly, Enamorado's ineffective assistance of counsel claim fails, as to this issue, under *Strickland*.

### d. *Cooperation concessions*

Finally, Enamorado contends that his counsel provided ineffective assistance by not objecting, at sentencing, to the prosecution's failure to abide by the terms of a plea agreement to not seek sentencing enhancements. When a guilty plea is induced by an agreement, the prosecution must abide by its terms. *United States v. Lovelace*, 565 F.3d

1080, 1087 (8th Cir. 2009) (citing *United States v. E. V.*, 500 F.3d 747, 754 (8th Cir. 2007) (holding that the prosecution breached the plea agreement by arguing that U.S.S.G. § 2D 1.1(b) applied when the agreement stated the opposite)); *United States v. Mosley*, 505 F.3d 804, 808–09 (8th Cir. 2007) (finding a breach when the prosecution cited defendant's pre-plea statements when refusing to abide by the plea agreement). Plea agreements are contractual in nature and should be interpreted according to general contract principles. *United States v. Leach*, 562 F.3d 930, 935 (8th Cir. 2009) (citing *United States v. Sanchez*, 508 F.3d 456, 460 (8th Cir. 2007)). Plea agreements are contracts that must be fulfilled. *See Santobello v. New York*, 404 U.S. 257, 262 (1971). The party asserting the breach has the burden of establishing a breach. *Leach*, 562 F.3d at 935 (citing *United States v. Smith*, 429 F.3d 620, 630 (6th Cir. 2005)). Ambiguities in plea agreements are construed against the prosecution. *United States v. Yah*, 500 F.3d 698, 704 (8th Cir. 2007) ("Where a plea agreement is ambiguous, the ambiguities are construed against the government.") (citing *United States v. Jensen*, 423 F.3d 851, 854 (8th Cir. 2005)).

Here, in paragraph 17B of the plea agreement, Enamorado stipulated to the firearm enhancement. Moreover, paragraph 17E of the plea agreement provided that the parties were free to argue for or against other sentencing enhancements at sentencing. Under these circumstances, Enamorado's claim fails because the prosecution was not precluded, under the terms of the plea agreement, from seeking sentencing enhancements. As such, Enamorado has failed to show either that his attorney's performance was deficient, or that had he had different counsel the outcome would have been any different. Accordingly, Enamorado's ineffective assistance of counsel claim fails under *Strickland*.

### D. *Certificate Of Appealability*

Enamorado must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000);

*Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I determine that Enamorado's motion does not present questions of substance for appellate review and, therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, with respect to Enamorado's claims, I do not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Should Enamorado wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

### III. CONCLUSION

For the reasons discussed above, Enamorado's Motion Under 28 U.S.C. § 2255 is denied in its entirety. This case is dismissed. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED**.

**DATED** this 14th day of June, 2017.

*[signature: Mark W. Bennett]*
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA